**229 P.2d 997**

### NIXON v. WEBBER–RILEY LUMBER CO. et al.

#### No. 7691.

Supreme Court of Idaho.

April 6, 1951.

Anderson & Thomas and Samuel Kaufman Jr., all of Boise, for respondent.

E. B. Smith, Boise, for appellant.

PORTER, Justice.

Appellant, Webber-Riley Lumber Co., is a co-partnership. At the time involved in this case, such appellant was conducting a lumber yard in Mountain Home. Sidney W. Webber was one of the partners and

manager of the lumber yard. Appellant lumber company had purchased the output of several sawmills operating in adjacent territory. The lumber company had two "contract haulers" hauling the lumber from the sawmills to its lumber yard. Such contract haulers had written contracts and were paid from $8.00 to $9.00 per thousand board feet, depending upon the distance the lumber was hauled.

Respondent, in June, 1948, purchased a Ford truck. Prior thereto, he had been employed as foreman in a garage in Mountain Home. He purchased a commercial license for the truck in order to be protected in any kind of hauling he might thereafter do. On or about June 21, 1948, respondent became engaged in hauling lumber for appellant lumber company. While engaged in such work, he sustained the injury involved in this action.

It was the duty of appellant lumber comany to keep the docks clear at the sawmills in order that the work of the mills might not be retarded. Also, the lumber company had contracted for the output of at least one additional small mill. The contract haulers were not able to keep up with the required hauling and appellant lumber company consulted with them about putting on some extra haulers to which they had no objection.

Mr. Webber, manager of appellant lumber company, got in touch with respondent and engaged him to help in the extra hauling. The terms of the oral agreement between the parties are described by such manager in his testimony as follows:

"Q. Will you state, Mr. Webber, the circumstances or the occasion for the agreement entered into between yourself and Mr. Nixon whereby he was to haul lumber for the Webber-Riley Lumber Company.

"Mr. Smith: That is objected to on the ground the occasion has already been described. It is repetition.

"Mr. Oppenheim: Overruled. You may answer.

"A. We had taken on the cut from a little mill Mr. Jones had over near Pine, and one or two of the other mills were cutting more lumber than they had figured they were going to cut. We called in the contract truckers and discussed it with them and we found that they were pretty well loaded down and we asked them if they had any objection if we would hire truckers at various times to relieve the congestion and get the lumber in, and they said they would have no objection to that. I heard Mr. Nixon had a truck and he was having it fixed up and wasn't doing very much at that time and I told him that we would have hauling,—I didn't know how long it would last or how much there would be to haul, but he could go to work for us and haul lumber from places we would designate and we would pay the same rate we were paying the contract haulers and settle with him every week.

We would tell him where to go and where to put the lumber when he got to the yard, and he said he would be glad to work for us on that basis.

"Q. Was that the extent of the agreement and understanding you had with Mr. Nixon? A. Yes. There wasn't anything complicated about it,—he brought the lumber in and we paid him."

According to the further testimony of Mr. Webber, respondent was not engaged to haul any definite amount of lumber; he could be discharged at any time by the lumber company; he could quit at any time; and nothing was said between the parties about any withholding tax or social security benefits.

In pursuance of the agreement, respondent commenced to haul lumber for the Webber-Riley Lumber Co. He would report to the lumber yard each morning and would be directed to the mill to which he was to go to get a load of lumber. When he returned, he was shown where to pile the lumber in the yard. The lumber, being of different grades, was piled in different places. The hauling became so heavy and involved such long hours that respondent, on several trips, took with him one Chet Kimball, whom he was breaking in as a helper. On the morning of July 16, 1948, while unloading his load of lumber in the lumber yard, respondent received the accidental injury to his leg involved herein. Chet Kimball thereafter continued to do some hauling and was paid for all his services by respondent. The lumber company paid respondent weekly for the amount of lumber he had hauled.

Respondent duly filed his claim for compensation with the Industrial Accident Board; the appellants answered; and a hearing was had. The board made an order of award of compensation to respondent. From such order, appellants have appealed to this court.

The only question raised on the appeal is whether the relationship between the Webber-Riley Lumber Co., and claimant was that of employer and employee, or that of principal and independent contractor. As supporting their respective positions, both parties cite and stress the recent cases of Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884, and Ohm v. J. R. Simplot Co., 70 Idaho 318, 216 P.2d 952, 953.

In the case of Laub v. Meyer, Inc., supra, this court was considering a painting contract. The contract called for the payment of compensation on a cost-plus basis for the completed job; and specifically provided that claimant was to take care of all insurance, including the withholding tax, except public liability and property damage. We recognized that the general test as to whether a party to a contract is an employee or an independent contractor is whether the other party has the right to control and direct the details of the work to be performed and to say whether the work shall stop or continue. We held that certain enumerated facts (not par-

alleled in the instant case) were insufficient to show that the claimed employer had the right to control the details of the work to be done. We determined that the facts in the case, as a matter of law, showed the existence of the relationship of principal and independent contractor.

In Ohm v. J. R. Simplot Co., supra, there was no material dispute as to the evidentiary facts but such facts were in substantial conflict as to which relationship existed. We held that it was the duty of the Industrial Accident Board to determine whether the claimant was an employee or independent contractor; and that the board having found adversely to the claimant upon substantial evidence, this court would not disturb such finding.

It is urged that the instant case is parallel with the Ohm case. However, there were a number of features in the Ohm case indicating that claimant was an independent contractor which are not present in this case. In the Ohm case, the company agreed to pay a bonus of one cent per sack for hauling the potatoes if the claimant continued until the job was completed. The company could not terminate the contract and deprive claimant of such bonus and claimant could not quit without suffering a loss of one cent per sack. Furthermore, the parties treated their relationship as that of principal and independent contractor as was shown by their settlement sheets on which appeared the words, "contract unloading & hauling potatoes at four cents per sack with one cent bonus if job is completed."

In the present case both parties recognized that respondent was in a different class from the contract haulers. Respondent was simply employed to do extra hauling when the same was available. There was no delimited job to be completed. The lumber company told respondent when and where to go and what to do. His pay was weekly for the piece work done and had no relationship to further work. The secondary facts that respondent furnished his own truck and employed a helper are factors, but are not controlling in this case.

The evidence amply sustains the board's conclusion that because the lumber company had the right to control the work of claimant through its power to control the details of his activities and to discharge him at will, claimant was an employee within the meaning of the Workmen's Compensation Law. I.C. § 72–101 et seq. The order of award of compensation by the Industrial Accident Board to respondent is affirmed. Costs to respondent.

GIVENS, C. J., and TAYLOR and KEETON, JJ., and HUNT, District Judge, concur.