912 P.2d 695

**James P. BETTINGER, an individual, Plaintiff–Appellant–Cross Respondent,**

v.

**IDAHO AUTO AUCTION, INC., an Idaho corporation, Defendant–Respondent–Cross Appellant.**

No. 21698.

Court of Appeals of Idaho.

March 12, 1996.

Thomas G. Maile IV, Boise, for appellant.

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Tyra H. Stubbs, argued.

PERRY, Judge.

James P. Bettinger was involved in a traffic accident in which another driver, Robert Young, was negligent. Young had an agreement with Idaho Auto Auction, Inc. (IAA) to transport vehicles for salvage. A trial ensued to determine the amount of damages and whether IAA was responsible for Young's negligence under the doctrine of *respondeat superior*. At the close of Bettinger's case, IAA moved for a directed verdict on the basis that the evidence presented was insufficient to establish that Young was an employee of IAA. The magistrate denied the motion, and the jury rendered a verdict in favor of Bettinger. IAA appealed to the district court which held that the magistrate erred in failing to grant a directed verdict on behalf of IAA. The district court vacated the jury's verdict, remanded the case for the entry of a judgment in favor of IAA and awarded attorney fees to IAA pursuant to Idaho Code Section 12–120. Bettinger now appeals from the district court's order.

## I.

### FACTS AND PROCEDURE

James P. Bettinger stopped his vehicle near the intersection of Fairview and Cole in Boise to allow the vehicle in front of him to make a left turn. The vehicle behind Bettinger also stopped. The next vehicle in line was a tow truck driven by Young. Young failed to stop and ran into the vehicle in front of him, which then collided with Bettinger's vehicle. Young was towing a vehicle for IAA at the time of the incident. Bettinger initially filed suit against Young and two other drivers involved in the accident. Bettinger amended the complaint and named IAA as the defendant, on a theory that IAA was Young's employer and thereby liable for his

actions pursuant to the doctrine of *respondeat superior*.[1]

The parties stipulated that Young was negligent and caused the collision. A dispute arose at trial as to whether Young was an independent contractor or an employee of IAA based on the following evidence. IAA operates a wholesale automobile auction. IAA had established a business relationship with a Portland company which owned two salvage yards. IAA sold vehicles for the Portland company and received a commission. The Portland company contacted Young with a proposal that he transport vehicles to IAA's premises for sale. Although no written contract was entered, an agreement was reached whereby Young began transporting the vehicles to IAA. IAA contacted Young with "pick up" orders for certain vehicles and requested that he deliver them. Young was paid for his services by IAA. This arrangement existed for several months prior to the accident involving Bettinger. Young had owned a towing business called A–1 Towing when the arrangement with IAA began, but he sold the assets of that business and purchased a new tow truck prior to the accident.

At the close of Bettinger's case, IAA moved for a directed verdict. The magistrate reviewed the testimony and denied the motion. The trial continued and the case then went to the jury, which awarded $5,085 to Bettinger. The magistrate ordered IAA to pay costs in the amount of $320 and attorney fees in the amount of $10,583.

IAA appealed to the district court. The district court ruled that the magistrate erred in failing to grant the directed verdict. The district court vacated the jury's verdict and remanded the case for entry of judgment in favor of IAA. The district court awarded costs and fees incurred on appeal to IAA in the amounts of $701.55 and $2,061 respectively.

Bettinger asserts that substantial evidence supported the jury's finding that Young was an employee and, therefore, the district court's order holding that a directed verdict

1. We will discuss whether the relationship between Young and IAA constituted "employment." This includes Bettinger's argument that Young was "an employee or agent" of IAA.

should have been entered was erroneous. Bettinger further argues that the district court erred in awarding attorney fees to IAA, that the magistrate properly awarded attorney fees to Bettinger and that he is also entitled to attorney fees on appeal. IAA cross-appeals, claiming that the district court erred by limiting the attorney fees awarded to IAA to those incurred on appeal and by failing to award IAA the attorney fees incurred in the trial before the magistrate.

## II.

## ANALYSIS

### A. Directed Verdict

#### 1. Standard of review

■ Whether a motion for a directed verdict should be granted is a question upon which the parties are entitled to full review by the appellate court without special deference to the views of the trial court. On review, we apply the same standard that governed the trial court's decision—whether, viewing the evidence in the record in the light most favorable to the non-moving party, there is substantial evidence upon which a jury could properly have found in favor of the non-moving party. *Cannon Builders, Inc. v. Rice,* 126 Idaho 616, 622, 888 P.2d 790, 796 (Ct.App.1995). This Court is called upon to make the legal determination as to whether there was evidence sufficient to create an issue of fact. *Quick v. Crane,* 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). Because the moving party admits the truth of the adverse evidence, this Court, in determining whether there is substantial evidence to submit the case to the jury, will examine the evidence in favor of the plaintiff and will not consider any conflicting evidence presented by the defendant. *Curtis v. DeAtley,* 104 Idaho 787, 789, 663 P.2d 1089, 1091 (1983).

#### 2. Sufficiency of the evidence

■ The doctrine of *respondeat superior* states that an employer is responsible for the torts of its employee when the torts are committed within the scope of employment. The issue of dispute between the parties in this case is whether Young was serving as an employee or as an independent contractor. IAA's right to control Young is central to the question of whether IAA was Young's employer and may, therefore, be imputed with liability for Young's tortious act. *Van Vranken v. Fence–Craft,* 91 Idaho 742, 747, 430 P.2d 488, 493 (1967). The right to control test has been explained by the Idaho Supreme Court in reference to the worker's compensation statutes. *Kiele v. Steve Henderson Logging,* 127 Idaho 681, 905 P.2d 82 (1995). The Supreme Court has recognized four factors used to determine whether a right to control exists: (a) direct evidence of the right to control; (b) method of payment; (c) furnishing major items of equipment; and (d) the right to terminate the relationship at will. *Kiele,* 127 Idaho at 683, 905 P.2d at 84, *citing Mortimer v. Riviera Apartments,* 122 Idaho 839, 844, 840 P.2d 383, 388 (1992). *See also Livingston v. Ireland Bank,* 128 Idaho 66, 910 P.2d 738 (1995).

### (a) Direct evidence of IAA's right to control

Bettinger claims that two components of the working relationship indicate that IAA had the right to control Young's performance and was therefore his employer: (1) the requirement that Young pick up the vehicles on a specified date; and (2) the volume of work which Young performed for IAA.

Bettinger asserts that because that Young was required to pick up the vehicles on a specified date, IAA controlled Young's performance. Review of the record makes it clear that the date of delivery was, in fact, flexible unless a check had already been prepared to pay for storage costs of the vehicle. If IAA had already issued a check, IAA requested that the vehicle be picked up on the date indicated on the check to prevent additional storage charges. However, if Young was unable to accomplish the delivery on the date specified, he paid for the additional storage charge and was then reimbursed by IAA.

■ Several cases have discussed the exertion of control over the time when work was to be done and whether this indicated an employment relationship. Notably, these

discussions deal with the daily working schedule of the parties. The party who decides when work starts in the morning, when lunch and intermediate breaks will occur and when the work day will end, exerts control over the execution of the duties involved. *See Olvera v. Del's Auto Body,* 118 Idaho 163, 795 P.2d 862 (1990); *Sines v. Sines,* 110 Idaho 776, 718 P.2d 1214 (1986); *Anderson v. Farm Bureau Mutual Insurance Co. of Idaho,* 112 Idaho 461, 732 P.2d 699 (Ct.App. 1987). Here, Young scheduled his own day. In fact, Young, not IAA, determined if the dates on the checks could be met and, if not, arranged to pick up the vehicles at a later date. Specifying a date of delivery would not, in itself, amount to control over Young's performance of his duties. The district court noted that the mere fact that IAA gave dates on which Young was to pick up the salvage vehicles was no more than the direction necessary to achieve the desired result of bringing the vehicles into IAA's storage yard for eventual disposition and did not rise to the level of control of Young's work necessary to establish an employee relationship. We agree. Requesting that a task be performed on a certain date, under the facts of this case, does not equate to control over the time, manner and method of performance.

Bettinger next argues that the volume of work given to Young in the months prior to the accident evidences that IAA exerted control over Young's job performance. However, Young was not bound to accept the assignments from IAA. At times, Young refused jobs offered by IAA because the vehicles were located too far away. There was no written contract defining the relationship between IAA and Young. Young testified that the reason he was working solely for IAA was because he received enough work from IAA that he did not have to pursue work elsewhere. Young exercised control over which job assignments, and how many jobs assignments, he accepted from IAA. IAA did not require the exclusivity of Young's performance, nor did IAA control the volume of work Young undertook.

The district court also held that IAA lacked control over Young's execution of his duties. Specifically, Young was engaged in an independent business when he was towing vehicles for IAA. Young was not subject to control over the method of performing his job and could hire his own assistants as he saw fit. The district court held that "all of these factors are 'earmarks' of an independent contractor." *See Anderson v. Farm Bureau Mutual Insurance Co. of Idaho,* 112 Idaho 461, 465, 732 P.2d 699, 703 (Ct.App. 1987).

Significantly, Young was free to perform his duties in whatever manner and method he found appropriate. IAA exerted only minimal restraint over the time in which Young performed his job. In light of Young's duties, IAA's control over the date of performance amounted to requiring certain results, not exerting control over the execution of the duties. The evidence in the record of IAA's right to control Young's performance was insufficient for a conclusion that Young was an employee of IAA.

### (b) Method of payment

██ Paying an hourly wage or a salary indicates an employer-employee relationship. *Kiele,* 127 Idaho at 684, 905 P.2d at 85; *Mortimer,* 122 Idaho at 844, 840 P.2d at 388. Here, Young received neither an hourly wage nor a salary. IAA paid Young according to a graduated pay schedule with set rates for mileage increments for each job performed. Hence, the payment system does not indicate an exertion of control. Further, income and social security taxes are generally withheld from a person's paycheck in an employment relationship. *Peterson v. Farmore Pump & Irrigation,* 119 Idaho 969, 972, 812 P.2d 276, 279 (1991). Young testified, and his pay stubs corroborated, that no taxes were withheld from the sums he was paid for his work. The method of payment factor of the exertion of control test indicates that Young was not an employee of IAA.

### (c) Furnishing of major items of equipment

██ According to the record, when the agreement between Young and IAA arose, Young owned his own towing company, A–1 Towing. During the course of the relation-

ship with IAA, Young sold A–1 Towing. Prior to selling the business, however, Young bought a new tow truck which he then used for the duration of his association with IAA. Hence, throughout the association, Young performed his duties with his own tow truck, the major equipment involved in his trade. Providing the essential equipment is an indication of independent contractor status. *Livingston,* at 70, 910 P.2d at 742. Young also provided his own knowledge and skill, obtained before his relationship with IAA, in operating that equipment. Therefore, this factor of the right to control test further indicates that Young was not an employee of IAA.

### (d) Right to terminate relationship at will

██ Both IAA and Young could terminate the relationship at will. Such arrangements are of little assistance in determining the relationship between parties, particularly where the services rendered are a succession of individual tasks separately assigned when the need arises. *Livingston,* at 70, 910 P.2d at 742, *citing J.R. Simplot Co. v. State Dep't of Employment,* 110 Idaho 762, 765, 718 P.2d 1200, 1203 (1986). The right to terminate the relationship weighs neither for nor against a finding that Young was an employee.

### 3. Insurance coverage

Bettinger claims that the district court failed to consider, as evidence that Young was an employee, IAA's variation from its custom of requiring proof of insurance from independent contractors. Although Bettinger acknowledges that the right to control test is the integral test in determining if an individual is an employee or an independent contractor, he asserts that the deviation from the custom surrounding proof of insurance is acceptable evidence of an employment relationship. A representative from IAA testified, when called as an adverse witness during the plaintiff's case in chief, that IAA did not inquire into Young's insurance protection because of a belief that the Portland salvage yard, which originally contacted Young about transporting the vehicles, had already verified Young's insurance. Any deviation from custom in this case does not necessarily indicate an employment relationship, however, because IAA's conduct in this case also did not coincide with its practice regarding employees' insurance. During an offer of proof on this issue, the district court asked if employees were covered by IAA's insurance. In response, IAA's representative stated that if IAA withheld taxes from a driver's payroll check and he drove a vehicle with IAA's license plates then he would be covered by IAA's insurance policy. Evidence adduced at trial shows that Young neither had taxes withheld from the checks he received from IAA, nor drove a vehicle owned by IAA. The district court properly concluded that the evidence regarding IAA's deviation from its normal practice regarding insurance for independent contractors did not demonstrate that Young was an employee.

### 4. Summary

██ To determine if IAA is liable for Young's negligence, pursuant to the doctrine of *respondeat superior,* this Court must decide whether IAA had the right to control Young's performance. The Idaho Supreme Court has discussed the right to control at length and has delineated a four-factor test. Evidence presented during Bettinger's case is insufficient to constitute direct evidence of IAA's right to control Young's performance, the first factor. The second factor is the method of payment. IAA paid Young on a per job basis and did not withhold taxes from his paycheck. Thus, this factor does not indicate employment. Young furnished the major items of equipment necessary for his job, and the third factor therefore indicates that Young was not IAA's employee. The final factor, right to terminate relationship at will, is neutral in this situation. Hence, the test indicates that IAA did not exercise control over the time, manner and method of Young's performance. Bettinger also urges us to consider IAA's deviation from its practice of requiring proof of insurance from independent contractors as evidence of IAA's control over Young. However, this break from custom does not indicate IAA's exertion of control over Young's job performance. In light of our examination of the record and

considering the factors recently expressed by our Supreme Court, we hold that the district court properly concluded that the directed verdict should have been granted. Accordingly, we affirm the order of the district court vacating the jury verdict and remanding the case for entry of a judgment in favor of IAA.

## B. Attorney Fees Below

On appeal, Bettinger raises several issues regarding the measure of attorney fees appropriately awarded if he were to prevail. However, as he did not prevail, we need not address these issues.

On its cross-appeal, IAA also raises issues regarding attorney fees. The district court awarded $2,061 in attorney fees to IAA, the amount apparently incurred on appeal to the district court. The district court did not award the balance of IAA's request for fees, an additional $7,458.75, which may have arisen from the trial before the magistrate. IAA is claiming a right to these fees pursuant to Idaho Code Sections 12–120(1) and 12–121. IAA asserts that when the district court vacated the jury verdict, IAA became the prevailing party at trial and commensurate fees should have been awarded. IAA suggests, however, that the awarding of the lower amount may have been due to a clerical error or the district court's failure to consider the fees incurred during the trial proceedings. Conversely, Bettinger contends that the award of $2,061 for the appeal to the district court was excessive.

Initially, we note that IAA filed a motion for rehearing on the attorney fees issue and then withdrew that motion due to uncertainty as to whether the district court maintained jurisdiction to rule on the issue while the appeal to this Court was pending. Pursuant to I.A.R. 13(b)(9) the district court had the jurisdiction to make "any order regarding the taxing of costs or determination of attorney fees incurred in the trial of the action" notwithstanding the filing of the notice of appeal in this case. *Security Pacific Bank of Idaho v. Curtis,* 123 Idaho 320, 328, 847 P.2d 1181, 1189 (Ct.App.1993). Therefore, we acknowledge that the district court may prop-

erly hear and decide motions regarding the imposition of fees during a pending appeal.

Idaho Code Section 12–120(1) provides that "in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees." The district court was vested with the discretion to determine the amount of attorney fees to award for the appeal from the magistrate's division. *Spidell v. Jenkins,* 111 Idaho 857, 727 P.2d 1285 (Ct.App.1986). If the district court, in exercising its discretion, found that IAA was entitled to reasonable attorney fees in the amount of $2,061 on appeal, then such an award was appropriately determined within the court's discretion. If, however, as counsel contends, the district court also denied the fees associated with the litigation before the magistrate, then vacation of the district court's denial is necessary. The district court, sitting in its appellate capacity, is not the proper forum for determination of the amount of an award of attorney fees incurred during a trial before the magistrate. The magistrate conducting the trial should hear any objection and argument in relation to attorney fees for the trial. Hence, we remand the award of attorney fees to the district court for clarification with the instruction that the district court determine a reasonable measure of fees only for the appeal to the district court. The case should then be further remanded, by the district court, to the magistrate for an award of attorney fees to IAA for the trial proceedings in a reasonable amount to be determined in the magistrate's discretion.

## C. Award of Attorney Fees and Costs for this Appeal

IAA, as the prevailing party on appeal, requests attorney fees pursuant to I.C. §§ 12–120 and 12–121. Idaho Code Section 12–120, discussed above, applies on appeal as well as during trial. *Bott v. Idaho State Bldg. Authority,* 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992). Therefore, IAA is entitled to its costs and attorney fees incurred on appeal pursuant to I.C. § 12–120.

## III.

## CONCLUSION

Young bore the indicia of an independent contractor. The evidence presented during Bettinger's case at trial was insufficient to create a question of fact as to whether IAA had a right to control Young's job performance. The district court properly decided that the magistrate should have granted a directed verdict. Accordingly, we affirm the district court's order remanding the case for entry of a judgment in favor of IAA. The record is unclear as to whether the district court found $2,061 a reasonable attorney fee award for the appeal proceedings, or if the district court also denied fees incurred in the magistrate's division. Therefore, the award of attorney fees below is vacated and remanded for clarification. We award costs and attorney fees to respondent Idaho Auto Auction on appeal from the district court.

WALTERS, C.J., and LANSING, J., concur.